06-5213-ag
Jiang v. Mukasey

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: February 6, 2008                                    Decided: March 27, 2008)

Docket No. 06-5213-ag

_____

Changxu Jiang,

*Petitioner*,

-*v.*-

Michael B. Mukasey,[*]

*Respondent.*

_____

BEFORE:  CARDAMONE, B.D. PARKER, and HALL, *Circuit Judges.*

_____

Jiang petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an immigration judge's denial of his motion to reopen based on ineffective assistance of counsel.  Because Jiang's decision to withdraw his application for asylum and withholding of removal and to accept a grant of voluntary departure was a reasonable strategic decision, we cannot say that counsel's assistance was ineffective.  We conclude, therefore, that the BIA did not abuse its discretion in dismissing Jiang's appeal.  The petition for review is DENIED.

---

[*] Attorney General Michael B. Mukasey is substituted for former Attorney General Alberto R. Gonzales pursuant to Fed. R. App. P. 43(c)(2).

FREDERICK P.S. WHANG, Seattle, Washington, *for Petitioner*.

J. MAX WEINTRAUB, Office of Immigration Litigation, Civil Division, U.S. Department of Justice (Peter D. Keisler, Assistant Attorney General, Carol Federighi, Senior Litigation Counsel, *on the brief* ), Washington, D.C., *for Respondent*.

PER CURIAM:

Petitioner Changxu Jiang, a native and citizen of the People's Republic of China, seeks review of an October 13, 2006 order of the Board of Immigration Appeals ("BIA") dismissing his appeal of Immigration Judge Annette Elstein's denial of his motion to reopen based on ineffective assistance of counsel. *In re Changxu Jiang*, No. A 78 711 995 (B.I.A. Oct. 13, 2006), *aff'g* No. A 78 711 995 (Immig. Ct. N.Y. City Dec. 6, 2005). The BIA determined that Jiang had not made a showing of ineffective assistance because it found that Jiang's decision to withdraw his application for asylum and withholding of removal before the IJ was a tactical decision to protect his current eligibility for an immigrant visa petition filed by his U.S. citizen wife. We conclude that the BIA properly dismissed Jiang's appeal, and we thus DENY the petition for review.[1]

**BACKGROUND**

Changxu Jiang, a native and citizen of the People's Republic of China, entered the United States without inspection in January 2000. In September 2000, Jiang filed an application for

---

[1] The Government filed a motion to dismiss Jiang's petition to this Court as untimely. The Government has since acknowledged in its brief that Jiang's petition for review was timely, and we deny the government's motion to dismiss.

2

asylum and withholding of removal in which he alleged that his wife by traditional marriage had died from a forced abortion and that the police had detained and abused him after he demanded that the family planning office take responsibility for her death. In December 2001, Jiang was served with a Notice to Appear that charged him with being removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States who has not been admitted or paroled.

### A. Immigration Court Hearings

Jiang appeared with his former counsel, Barry Schneps, before Immigration Judge ("IJ") Elstein in January 2001. After adjourning the proceedings several times, the IJ heard the merits of Jiang's asylum and withholding claims in November 2003. Jiang testified that he would be arrested if returned to China in part because the Chinese government had been made aware of Jiang's asylum application when the U.S. government allegedly breached his confidentiality by contacting the Chinese government to verify the authenticity of documents relating to his claim. During the course of the November 2003 hearing, the IJ voiced two principal concerns. She questioned Jiang about the authenticity of certain documents because the government had introduced evidence showing that they were falsified. Further, the IJ noted that there was insufficient evidence to show that Jiang had filed his asylum application within the mandatory one-year filing period. The hearing was adjourned to give Jiang the opportunity to address both concerns.

### B. Withdrawal of Asylum Application and Request for Voluntary Departure

When the hearing resumed, in June 2004, Jiang withdrew his application for asylum and withholding with prejudice and thereafter sought only voluntary departure. In the course of these proceedings, the IJ asked Jiang if he and his attorney had discussed the decision and whether

3

Jiang understood that he could not renew his asylum claim at a later time. Jiang replied that he understood the consequences and had discussed the decision with his attorney. The IJ permitted Jiang to withdraw his asylum and withholding application and granted voluntary departure.

### C. Motion to Reopen

Two months later, in August 2004, Jiang filed a motion to reopen based on the ineffective assistance of his former counsel. He argued that he was "never made aware of the various legitimate legal bases for pursuing his asylum claim, was never apprized [sic] of the blatant nature of the violation of his confidentiality by the INS Guangzhou office and was instead urged to withdraw his asylum application and to seek voluntary departure." He contended that his testimony before the IJ was sufficient to meet his burden to prove that he had timely filed his asylum application. He also asserted that he was eligible for asylum based on his past persecution and the Government's breach of his confidentiality when investigating his asylum claim.

In April 2005, the IJ denied the motion, finding that Jiang "was not the victim of ineffective assistance of counsel, but that he had a full and fair hearing," after which Jiang appeared to have decided "that the risks involved, given the serious and numerous legal questions [at issue], did not warrant his proceeding." The IJ noted that Jiang and his counsel had decided to withdraw his "questionable" asylum claim to protect his eligibility for a visa petition filed by his U.S. citizen wife.[2] The IJ pointed out that Jiang's claim was based on "birth control action taken against a woman who was not his 'spouse'" and that it involved documentation "found by

_____

[2] In 2003, while his removal proceedings were pending, Jiang had married a U.S. citizen who later filed an I-130 petition on his behalf.

4

the Government to be fraudulent or at least seriously questionable." Taken together with the question about whether Jiang had filed his asylum application within one year, "which would have limited [Jiang] to a much higher standard of proof than that required for asylum," the IJ concluded that these factors led to Jiang's withdrawal of his asylum claim with prejudice.

Jiang timely appealed to the BIA.

### D. BIA Dismissal of Jiang's Appeal

In October 2006, the BIA dismissed Jiang's appeal of the IJ's denial of his motion to reopen, agreeing with the IJ that Jiang had not shown ineffective assistance of counsel. The BIA determined that Jiang's former counsel had "handled his case in a professional manner" and correctly advised Jiang that if he were found to have made a frivolous asylum application, he would have been barred from seeking any immigration benefits in the future. The BIA found that Jiang had "opted for a particular strategy and form of relief, and although he might wish to fault his attorney and recant that decision, he [was] nonetheless bound by it" because he had not shown that his former attorney's handling of his case had been "so egregious" that the proceedings were rendered unfair. The BIA agreed with the IJ that Jiang's decision to seek voluntary departure had been a tactical decision to protect his eligibility for a visa petition filed by his U.S. citizen wife. Further, the BIA noted that Jiang had "knowingly" agreed to abandon his asylum application and to accept voluntary departure.

Jiang now petitions this Court for review of the BIA's order.

5

## I. Standard of Review

We review the BIA's denial of a motion to reopen for abuse of discretion. *Jian Hua Wang v. BIA*, 508 F.3d 710, 714 (2d Cir. 2007). An abuse of discretion may be found where the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 93 (2d Cir. 2001) (citations omitted). "Where the BIA adopts the decision of the IJ and merely supplements the IJ's decision . . . we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

## II. Applicable Law

A motion to reopen premised on ineffective assistance of counsel must comply with the requirements set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988),[3] and establish that "counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing," *Jian Yun Zheng v. U.S. Dep't of Justice*, 409 F.3d 43, 46 (2d Cir. 2005) (quoting *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992)). To show fundamental unfairness, the applicant must allege sufficient facts to show that competent counsel would have acted otherwise and that the applicant was prejudiced by his counsel's performance. *Romero v. INS*, 399 F.3d 109, 112 (2d Cir. 2005). This Court "uses its own judgment as to whether counsel was effective." *Esposito v. INS*, 987 F.2d 108, 111 (2d Cir. 1993).

## III. Ineffective Assistance of Counsel

---

[3] Jiang's compliance with *Matter of Lozada* is not at issue. The BIA accepted that Jiang had complied with the requirements, and the Government does not dispute it here.

The BIA did not abuse its discretion in dismissing Jiang's appeal from the IJ's denial of his motion to reopen. The BIA properly determined that Jiang did not make a showing of ineffective assistance of counsel because he did not establish that his prior counsel's handling of the case was so egregious that his hearing was rendered unfair. Rather, Jiang's counsel's advice to withdraw the application for asylum and withholding of removal was a strategic decision to pursue tactics that would preserve Jiang's ability to obtain an immigrant visa through his U.S. citizen wife.

Jiang received a full and fair hearing at which questions arose as to the timeliness of his asylum claim and evidence supporting it. By accepting voluntary departure under 8 U.S.C. § 1229c(a), Jiang stood to avoid the legal consequences of (1) leaving the United States under an order of removal, and (2) a potential finding of a frivolous asylum application.[4] Given Jiang's questionable asylum claim, which was based on a forced abortion performed on his putative wife and substantiated by possibly fraudulent documentation relating to her death, together with insufficient evidence to prove that Jiang filed his asylum application within the one-year filing period, Jiang's former attorney reasonably advised Jiang to withdraw his asylum claim in favor of obtaining voluntary departure. We hold that recommending this sort of strategic decision does not constitute ineffective assistance of counsel.

In so ruling we join with the Ninth Circuit. When confronted with a similar issue, that court held that where an attorney advises a client, as a tactical matter, to seek voluntary departure rather than pursue other forms of relief, the proceedings remain fundamentally fair. *Magallanes-*

---

[4] Jiang would have been inadmissible for ten years if he had left the United States under a removal order. 8 U.S.C. § 1182(a)(9)(A)(ii)(I). Further, if his asylum application had been found to be frivolous, he would have been permanently ineligible for benefits, which would have eliminated altogether his opportunity to obtain a visa through his U.S. citizen wife. 8 U.S.C. § 1158(d)(6).

*Damian v. INS*, 783 F.2d 931, 934 (9th Cir. 1986). There, the petitioners' attorney conceded deportability in order to obtain an extended voluntary departure period based on the attorney's judgment that pending amnesty legislation would allow petitioners to become lawful permanent residents before the voluntary departure period expired. *Id.* at 933-34. The Ninth Circuit concluded, as we do here, that the attorney's decision, even if unwise in hindsight, was a tactical decision that did not constitute ineffective assistance. *Id.* ("It is not unusual or egregious for counsel to make tactical decisions that ultimately fizzle and redound to the client's detriment." (quoting *LeBlanc v. INS*, 715 F.2d 685, 694 (1st Cir. 1983))).

Jiang argues that competent counsel would have handled his asylum claim differently.[5] For the reasons already discussed, the record does not compel a finding that competent counsel would have acted differently given Jiang's questionable asylum claim and his pending visa petition. Jiang also asserts that the United States Government negligently breached his confidentiality by providing the Chinese government with a document from which it could reasonably be inferred that he was seeking asylum in the United States, thereby exposing him to new risks which may now render him eligible for asylum. Like his other arguments relating to his asylum claim, however, Jiang chose to abandon this issue when he withdrew his asylum application and sought voluntary departure.

## CONCLUSION

For the foregoing reasons, we DENY the Government's motion to dismiss the petition, and we DENY the petition for review.

---

[5] In his brief, Jiang argues that his former attorney provided ineffective assistance of counsel and he cites several examples of how his attorney could have handled his case differently. These contentions, however, are essentially mooted by Jiang's knowing and voluntary decision to abandon his asylum claim, which we have determined proceeded from reasonable, strategic advice given by his counsel.